THE SECURITY BENEFIT ASSOCIATION *v.* FARMER.

4-4476

Opinion delivered December 21, 1936.

*C. M. Buck,* for appellant.

*Holland & Barham,* for appellee.

McHANEY, J. This is an action by appellee against appellant to recover on a beneficiary certificate for $2,-000 issued by appellant on the life of Brinnie L. Farmer, in which appellee was named the beneficiary. The complaint alleged that Mrs. Farmer died on February 1, 1935, proof of death was furnished, and payment was refused. It further alleged that the said certificate shows the age of the deceased as 44 years at the time of the issuing of the policy, when as a matter of fact she was 57 years old; that said facts were known to appellant's district manager, one Essig, who wrote the application for the policy; that said agent was well acquainted with the family, and that he prepared the said application without informing the insured that he had misstated her age; that the insured informed said agent that she had had an operation several years before but that said agent in the application answered a question in regard thereto in the negative, and that the insured had no knowledge or information that the said agent had put the wrong answers in her application. She prayed judgment for $2,000, with interest, 12 per cent. penalty and a reasonable attorney's fee. Appellant answered admitting the issuance of the certificate, the correct age of the insured, the proof of death and date of her death. It denied the other allegations of the complaint. It further answered that it was a fraternal beneficiary association without capital stock, organized and operated under the laws of Kansas, and licensed to do business as a fraternal beneficiary association under the laws of Arkansas; that it is organized for the benefit of its members and their beneficiaries and

not for profit; that it has a lodge system with ritualistic form of work; that the insured applied for a beneficiary certificate, and in her application stated that she was born on September 25, 1890, when, in truth, she was born on September 25, 1877, and that her age at nearest birthday was 44 years, when, in truth, it was 57; that she answered the question, ''Are you now in good health?'' in the affirmative; that other questions as to whether she had been in a hospital, whether she had been under the care of a physician in the past five years, whether she had undergone a surgical operation, in the negative. It claimed that it relied upon the answers in the issuance of said certificate; that the insured warranted them to be true, and because of their falsity appellant was not liable. It further alleged that the insured was not in good health at the time the policy was issued and was not in good health at the time it was delivered, and for all of which reasons it was not liable. The case was tried to a jury which resulted in a verdict and judgment for appellee, and the case is here on appeal.

The policy or certificate was dated August 21, 1934. It was not delivered until November 19, 1934, because at the time it was first presented for delivery the insured was not able to pay the premium thereon, and at her request the policy was held until November 19, 1934, when it was delivered, and a health certificate was asked for and obtained by said agent at the time of delivery.

There is a dispute in the evidence as to whether the insured was in good health at the time the policy was delivered on November 19, 1934. The appellee, who was present at the time the policy was delivered stated that said agent, Mr. Essig, brought it to their home just as they were getting ready to leave to go to Blytheville; that he told them that because of the delay in delivering it she would have to sign a statement of good health which he presented and asked her to sign, which she did; that neither she nor her mother read the statement nor was it read to them. She also testified that her mother was in good health and had been ever since the date of the application for the insurance; that she had done her work about the house and the farm and had not been sick. A

number of other witnesses testified as to insured's good health both before and after the application and before and after the delivery of the policy. Dr. Fox testified that he had treated her and had prescribed for her between the date of the application and November 19, 1934. We think the evidence of good health at the date of the delivery of the policy was properly submitted to the jury. The court told the jury that if they found the deceased was in good health on the date of the delivery of the policy and the date of the signing of the application, their verdict should be for appellee, and the jury so found, on a disputed question of fact which is binding on this court.

As to the contention of the appellant that false answers were made in the application which must result in avoiding the insurance, a different question is presented. We think the record in this case shows beyond any doubt that Essig, the agent of the appellant, wrote the application himself, in his own handwriting, filled it out from his own knowledge, and without asking the insured any questions whatsoever regarding her age, previous health, or any other information sought to be elicited.

All of the parties live at Manila, Arkansas, a small place, and the agent knew the insured intimately, and had so known her for many years. He knew her approximate age and knew that she had been in the hospital some years ago for an operation and he knew the general condition of her health. Based upon his knowledge, he filled out the application for this insurance himself, answered the questions himself, and if they are incorrectly answered, which is conceded, in some respects, they are the answers of appellant's agent for which appellant is bound. The medical examination appears to have been made by appellant's own medical examiner, but, if not, it was filled out by appellant's agent based upon his own knowledge and information.

In 32 C. J., p. 1333, the general rule is stated as follows: "Where the facts have been truthfully stated to its agent but by his fraud, negligence, or mistake are misstated in the application, the company cannot, ac-

cording to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of insured. Among the reasons given for this rule are: That the company assumes to draft the papers so as to meet its own views as to their requirements; that the agent is the agent of the company; that his knowledge will be imputed to the company; that the statements in the application are in fact his statements; that the company is estopped from controverting their truth; and that the evidence does not constitute an attempt to vary a written contract by parol, although there is some authority to the contrary based on the theory that in making the application, the solicitor is acting as agent of the applicant, or that the introduction of evidence to show the fact would violate the rule excluding parol evidence to alter a written contract." The same rule is stated in 14 R. C. L., p. 1174, in this language: "It is the general rule that an insurance agent in making out an application for insurance acts as the agent of the insurer and not of the insured, and if the insured makes proper answers to the questions propounded the insurer cannot take advantage of a false answer inserted by its agent, contrary to the facts as stated by the applicant."

Relative to the reinstatement of a lapsed policy, in 37 C. J. 502, the rule is thus stated: "In the absence of fraud on the part of the insured, insurer cannot avoid the reinstatment because of false answers to the questions inserted in the application by its agent where insured had given the correct information to the agent." A great many cases are cited to support these declarations of law. These statements of law above cited are quoted with approval in the case of *Bank Savings Life Ins. Co.* v. *Butler*, 38 Fed. (2d) 972, decided by the Court of Appeals, Eighth Circuit, February 24, 1930, where the holding was in accord with the declarations of law above stated. In Cooley's Briefs on Insurance, (2d Ed.), Vol. 5, p. 4128, it is said: "Though in some

of the earlier cases a distinction was apparently made where the false statements inserted by the agent were made warranties (*Jennings* v. *Chenango County Mut. Ins. Co.*, 2 Denio (N. Y.) 75), the present rule is well settled that the estoppel applies whether the statements are warranties or mere representations. Every consideration of reason and justice forbids the making of any distinction between the two classes of statements (*Mutual Benefit Life Ins. Co.* v. *Robison,* 58 Fed. 723, 7 C. C. A. 444, 19 U. S. App. 266, 22 L. R. A. 325).'' In a footnote to the above quotation, a number of cases are cited to sustain the statement of law made and among them is our own case of *Providence Life Assur. Soc.* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 835. It was there held, to quote the third syllabus: ''Where a medical examiner has authority, express or apparent, from an insurance company to fill up blanks for answers to questions, and does so by writing false answers, and thereafter procures the signature of the applicant thereto, after he had given correct answers to the questions, and the company afterwards receives the premiums and issues a policy, the company will, upon the death of the insured, be estopped from insisting on the falsity of the answers, although warranted to be true; but if the applicant discovers that a fraud has been perpetrated on him and the company, he cannot hold the policy without approving the action of the agent.'' See also *Mutual Reserve Fund Life Ass'n* v. *Farmer,* 65 Ark. 581, 47 S. W. 850.

We are, therefore, of the opinion that appellant is estopped to insist upon the false statements, conceding them to be false, in the application for insurance or in the health certificate signed at the time the policy was delivered because they are the statements of appellant's agent and not the statements of the insured. Certain instructions are criticized by appellant, but it appears that the trial court instructed the jury in conformity with the principles of law herein stated and are, therefore, not open to objection, and the judgment on the direct appeal will, therefore, be affirmed.

As to the cross-appeal of appellee, that appellant should be charged with a 12 per cent. penalty and a rea-

sonable attorney's fee, we cannot agree with her in this contention. Appellee brought this action and tried same on the theory that it was a mutual benefit society. While she prayed for a penalty and attorney's fee in the complaint, she did not insist upon them at the conclusion of the trial, but waited until the next term of court when she filed a motion to retax the costs so as to include the penalty and attorney's fee. We think the court correctly held against appellee in this regard, for if in fact it is a mutual benefit society the penalty and attorney's fee statute (C. & M.'s Dig., § 6155) has no application as has been many times decided by this court. The judgment will, therefore, be affirmed on the cross-appeal.