PROGRESSIVE LIFE INSURANCE COMPANY *v.* PRESTON.

4-4670

Opinion delivered May 24, 1937.

*Alfred Featherston, Duty & Duty* and *E. M. Arnold*, for appellant.

*John Owens* and *Millwee & Goodson*, for appellee.

BUTLER, J. On December 8, 1934, Alice Preston made application to the appellant insurance company for a joint policy of insurance on her own life and that of Birdie Walker, each to be the beneficiary of the other. The policy was issued on the 13th day of December, 1934, and shortly thereafter delivered to Alice Preston. On February 12, 1935, Birdie Walker died and, upon proof of death being submitted, appellant denied liability. This action followed and was submitted to the court sitting as a jury upon the evidence adduced. There was a judgment in favor of the appellee from which comes this appeal.

There are a number of assignments of error urged for reversal none of which we need notice except the one first argued, namely, that under the contract and undisputed proof a verdict should have been directed for the appellant. Among other grounds is the contention that in the application for the policy appellee warranted that Birdie Walker did not have tuberculosis, that she did not then have, and had never had, any other disease or mental defect, that she had never been in any hospital or institution of like nature for treatment, that she had not consulted a doctor during the eight months preceding the making of the application and was free from disease at that time.

The pertinent provisions of the policy are as follows:

"Section 7 of Part 13—Proofs satisfactory to the company must be furnished of any accident or disability before approval of payment will be made. No obligation is assumed by this company, nor is this contract effective, prior to the date hereof, nor unless the applicants hereunder are alive and in sound health and all premiums paid on the date of delivery and acceptance by them of this policy."

"Part 16. Consideration. This policy is issued in consideration of the application therefor, the original of which is on file with the company and made a part hereof, payment in advance of an initial premium of two

dollars, which provides insurance until the first day of February, 1935, and one dollar for each month's insurance on the first day of each month thereafter, without notice at the home office of the company in Rogers, Arkansas.''

It is admitted that the application for the insurance was made without the knowledge or consent of Birdie Walker, who was not a blood relative of appellee. Appellee claims, however, that Birdie Walker was indebted to her in the sum of $50 for money borrowed in 1933 and 1934. It is stated by appellee in the application that Birdie Walker was thirty-five years old. The application contained the following:

''5. Have you any of the following diseases? * * * Tuberculosis? Ans. No.

''6. Have any of you ever had, or do you now have, any other disease, physical or mental defect? Ans. No.

''7. Have you gained or lost in weight in the past year? Ans. No.

''8. Have any of you ever been operated on or been under observation, care or treatment in any hospital or sanitorium, asylum or similar institution? Ans. No.

''10. How recently have any of you consulted a doctor and for what reason (give full particulars, name and address of the doctor)? Ans. About eight months.

''15. Are each of you now free from disease or symptom of disease and in perfect health? Ans. Yes.

''17. The above representations as to our physical condition, age, nationality and occupation are warranties and covenants by us and are to be construed as such, are true and correct and are made to enable us to obtain a policy of insurance in the Progressive Life Insurance Company of Rogers, Arkansas. We further covenant and warrant that we have read each of the foregoing questions and answers before signing our names to this application, and each of said answers is set down exactly as stated by us, and the aforesaid statements and answers are full, complete and true in every particular and are the only statements and answers upon which this application is made. * * *

"18. It is hereby provided and mutually agreed between the applicants and the Progressive Life Insurance Company that this application together with the statements, warranties and agreements herein contained, as above set forth and including all appearing on subsequent pages of this form, shall be a part of the contract and that full compliance by the policy-holder with all rules and requirements herein set forth or referred to shall be a condition precedent to any recovery of benefits that may be provided in a policy issued herein.

"25. We agree, on behalf of ourselves and any person who shall have or claim any interest in any policy issued herein, that the company shall not incur any liability upon this application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company or its authorized agent, and the policy has been delivered to and accepted by us during our lifetime and good health.

"26. The applicants assume the entire burden of making full and true statements and revelation as to their bodily condition and history, and to fully informing themselves with reference thereto before signing and delivering this application * * *.

"28. We hereby expressly waive, on behalf of ourselves and any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended us, or who may hereafter attend or examine us, from disclosing any knowledge or information thereby acquired by him, and we expressly authorize such disclosure.

"I, the undersigned, whose relationship to applicant is niece, have signed the names of said applicants to this application and in doing so vouch for the truthfulness of all answers to the questions and agree for the applicants to condition made in said application.

"Signed by Alice Walker Preston for applicant."

While the language of the quoted provisions of the policy and application is not literally that of the contract considered in *Springfield Life Ins. Co.* v. *Slaughter*, 183 Ark. 692, 38 S. W. (2d) 13, it is the same in all sub-

stantial particulars. The distinction pointed out by the appellee that in the case cited the application was attached to the policy, while in the instant case the original application was retained in the files of appellant company, is unimportant. The essential fact which renders the two contracts of like nature is the provision in both that the application is a part of the contract. In the application the answers to the questions propounded are warranted to be true, full and complete in every particular; that they are made to obtain the policy of insurance and that the said statements "shall be a condition precedent to any recovery of benefits that may be provided in the policy issued" thereon. Further, the applicants "vouch for the truthfulness of all answers to the questions and agree for the applicants to conditions made in said application."

As is said in the case cited, *supra,* "The provisions of the policy set out above clearly made the answers relating to the health of the insured warranties and not mere representations. They were in the nature of an absolute agreement and not statements of belief." The doctrine of the cited case finds support in *Cunningham* v. *National Americans,* 123 Ark. 620, 185 S. W. 786, and *Royal Neighbors of America* v. *Tate,* 186 Ark. 1138, 57 S. W. (2d) 1055.

Under the contract, the only question to be determined here is the truthfulness or untruthfulness of the answers made to the questions propounded in the application. It conclusively appears that the answers were false. Six disinterested witnesses who knew and had opportunity to observe Birdie Walker in the fall of 1934 and until a short time before her death testified that she acted as, and had the appearance of, a sick woman. One of these witnesses was Birdie Walker's pastor, who saw her when she returned from a trip which she made on a train in October, 1934. He saw her in bed after she returned from that trip. He made frequent visits to her home and some three or four weeks after her return he found her in bed. He called at her home frequently to have prayer and discussed with her the matter of her get-

ting better or worse, and she did not seem to have any confidence in getting well.

In addition to this testimony were the depositions offered in evidence of Dr. W. M. Blackshare, Dr. James R. Waugh and Dr. D. C. Lee of Hot Springs. Before these depositions were offered the trial had commenced and the appellee had testified. When the depositions were offered appellee interposed a general objection to the testimony of deponents as being hearsay "based upon records which were not presented at the time of the taking of the depositions; and for the further reason, as shown by said depositions, that the records from which the testimony was given were not available to the witnesses."

The trial court, in passing on the objections as presented, stated that the objections would be confined to the irregularities in the taking of the depositions, and "if any objection or any incompetent testimony before the depositions are submitted, require you to make specific objections in writing." Immediately after this declaration the depositions were read in evidence. No exceptions in writing were filed specifying grounds of objection filed with the papers of the case and noted on the record as provided by § 4248 of Crawford & Moses' Digest. Neither were any exceptions determined before final submission. Under the doctrine announced in *Seamster* v. *State*, 74 Ark. 579, 86 S. W. 434, this must have been done, otherwise the party offering the depositions had a right to assume that their introduction in evidence would meet with no objection. See, also, § 4250, Crawford & Moses' Digest.

When we examine the depositions, we find that they were taken pursuant to a written notice at the time and place mentioned therein and that counsel for appellee was present cross-examining the witnesses. It is clear that the physicians not only testified as to matters within their personal knowledge, but, also, from records of the clinic where Birdie Walker had been under observation which records were before them at the time their testimony was given, except one who testified from notes he had made from the records. No objection was made to

the giving of testimony by the physicians from the records and no request made for the identification of the records by the persons who had made them, or that copies of the same be attached as exhibits to the testimony of the witnesses. It was further stipulated by the attorneys at the time the depositions were taken that all objections as to the relevancy and materiality of any evidence that might be given should be made in writing at least three days before the trial of the cause, and that the depositions should be filed with the clerk of the court at least ten days before the trial. It is clear that the objections interposed came too late and were, in fact, waived.

Each of the doctors who testified made a personal examination of Birdie Walker, who was admitted to the clinic in Hot Springs on October 12, 1934. The physical findings made by these doctors indicated the presence of pulmonary tuberculosis. Dr. Lee, who was the pathologist of the clinic, ran the test of the sputum of Birdie Walker himself and found it to show positive tuberculosis. The physical examinations made by these physicians also indicated syphilis. There was a marked enlargement of the glands in her neck and a Wasserman test was immediately ordered which showed positive "four plus." On the day following the first Wasserman test, a second was made which also showed positive four plus, indicating that the disease was of four years duration, or longer.

In announcing the reason upon which judgment was based and in commenting upon the testimony introduced by way of depositions, the trial court held that testimony incompetent for the reason that the records from which the physicians testified were the best evidence "and there is no reason why the originals should not have been attached." We think the trial court was in error for the reasons we have previously stated in commenting upon the manner in which the depositions were taken and the time the attempted objections were made. The court also overlooked the testimony relating to the physical examination of Birdie Walker made by the physicians and the sputum test run by one of them which showed positive tuberculosis. All this came within their per-

sonal observation, was not based upon any record, and was sufficient to establish the diagnosis of pulmonary tuberculosis.

Opposed to the testimony of the lay witnesses heretofore noted and that of the physicians was the testimony of Allen Walker, the husband of Birdie Walker, and his brother, Riley Walker. The effect of Allen Walker's testimony was that his wife was sick about three weeks before her death; that up to that time she did house work and cooked meals. Riley Walker testified in effect that Birdie kept her own house until about ten days before her death, and, as well as he remembered, her health was pretty fair about December 8. This testimony in no manner contradicts the evidence showing that she was afflicted with the specific diseases testified to by the physicians. From the undisputed testimony which we think is competent, there is no doubt that Birdie Walker was afflicted with both diseases mentioned by the physicians at the time of the examinations made by them about the middle of October, 1934, and, necessarily, was so afflicted on December 8, following.

We have not overlooked the cases cited by appellee in support of her contention that the statements made in the application were mere representations and, to avoid the policy, must not only have been false, but made with knowledge of that fact and with the purpose to fraudulently obtain the policy, and that, since there was no evidence to show that such statements were knowingly false, liability exists. The first case relied on is that of *Missouri State Life Ins. Co.* v. *Witt,* 161 Ark. 148, 256 S. W. 46, but there the contract itself provided that all the statements made by the insured in the absence of fraud should be deemed representation and not warranty. In *Modern Woodmen of America* v. *Whitaker,* 173 Ark. 921, 293 S. W. 1045, the application was not set out in the opinion because there was no controversy as to the insured's condition of health at the time it was made. However, the case turned on the question as to whether or not the insured warranted her soundness of health at the time of the delivery of the policy. That question was submitted to the jury on conflicting testimony which found

that the insured's good health was established by a preponderance of the testimony.

In *The Maccabees* v. *Gann*, 182 Ark. 1141, 34 S. W. (2d) 456, this court said: "Notwithstanding the assured was in excellent health at the time of the application, and notwithstanding the fact that the company's physician examined her and was advised that she had some ailments, but that she did not think they amounted to anything, still the company seeks to avoid the policy by undertaking to enforce strictly the rule, harsh and unfair as it is, that, if the answers were not literally true, recovery cannot be had, regardless of the good faith of the applicant. * * *

"A warranty is in the nature of a condition precedent; it must appear on the face of the policy; it cannot be created or extended by construction."

In the case at bar the contract establishes a warranty under the rule announced in the last paragraph, *supra*. By express terms the truthfulness of the answers to the questions contained in the application is made a condition precedent to the liability of the insurer under the contract.

In *National Life & Accident Ins. Co.* v. *Threlkeld*, 189 Ark. 165, 70 S. W. (2d) 851, the defense was that the statements by the insured relating to his good health at the time the policy was delivered to him were wilfully and knowingly false and made with the intent to deceive the insurer. The court found that this contention was not sustained by the evidence and correctly rendered judgment against the insurer.

Other cases cited by appellee relate to the rule that the knowledge of the insurer's agent of false statements given by the insured operates as a waiver of the right to avoid liability because of such false answers. These cases have no application to the case at bar for there is no evidence that the agent of the appellant knew that the statements of the applicants were false.

From the views expressed, it follows that the trial court erred in its refusal to instruct a verdict for the appellant, and its judgment is accordingly reversed, and the cause dismissed.