PROGRESSIVE LIFE INSURANCE COMPANY *v.* HULBERT.

4-5104

Opinion delivered June 6, 1938.

*Duty & Duty* and *E. M. Arnold*, for appellant.

*Tom Kidd*, for appellee.

SMITH, J. This is a suit upon an insurance policy issued by appellant upon the life of E. D. Hulbert on March 11, 1936. The insured died March 17, 1937. Liability on the policy is denied upon the ground that the insured was suffering from gastric ulcers when the policy was written, whereas, in his answers to the questions contained in the application for the insurance, he had stated that he was in sound health.

The policy here sued on is identical with the policy sued on in the case of *Progressive Life Ins. Co.* v. *Preston,* 194 Ark. 84, 105 S. W. 2d 519, it being provided in this policy, as it was in that, that no obligation was assumed unless the applicant was in sound health on the date of the delivery of the policy. The answers of the applicants for the insurance in each case were expressly made warranties as to the state of the applicant's health. In the former case a recovery was denied in the suit of the beneficiary upon the policy because the insured had tuberculosis when the policy was delivered. Under the terms of the policy it was held that the applicant's statements as to the condition of his health were in the nature of an absolute agreement, and were not mere statements of belief. We must, of course, give the same provisions of the policy here sued on the same construction.

The question for decision is, therefore, the one of fact whether the insured had stomach ulcers when the policy was delivered, the undisputed testimony being to the effect that one suffering from stomach ulcers could not be said to be in sound health.

Upon this issue the court charged the jury that ". . . the term 'sound health' means that a person is in fact free from any disease or ailment which tends seriously to affect the health," and that there could be no recovery unless the insured was in sound health.

The testimony on behalf of the plaintiff was to the effect that the insured was not only of sound health when the policy was delivered, but that he continued to be for some time thereafter, in vigorous health; that he was

an athlete and taught wrestling and boxing to the young men in his neighborhood and participated in these sports; that he was a hearty eater and ate what he pleased and suffered no discomfort on that account; that he ate various foods, which the testimony shows would have caused great distress to one suffering from stomach ulcers, without suffering any pain or distress.

Opposed to this testimony was the following. Mrs. Breitenberg, who at one time had been a neighbor, testified that the insured had told her at a time prior to the issuance of the policy that he suffered from stomach trouble and was on a diet consisting of light foods. She further testified by deposition that she was at the insured's home on one occasion before the issuance of the policy and that he was attended by Dr. Browning, and the doctor told her the insured "Is pretty sick in his stomach, ulcers of the stomach or whatever you call it." This witness also testified that in 1931 the insured's wife had to cook special foods for him.

The testimony concerning what Dr. Browning had said was incompetent as hearsay. There was testimony also to the effect that Dr. Gould—and not Dr. Browning—was the family physician. The testimony as to the insured being able to eat only specially prepared foods was categorically denied by several witnesses, one of whom had worked for and boarded with the insured for three months. This witness said that during the three months he lived in insured's home he had never heard of insured being ill or on a diet; that the insured ate heartily of all foods placed on the table, including pork and other kinds of meats, and that the insured appeared to be in robust health and "was one of the strongest men I ever saw."

It was testified also by several witnesses that the reputation of Mrs. Breitenberg for truth and morality was very bad, and it is evident that the jury disregarded her testimony as being untrue.

Dr. Gould was the insured's family physician for five years, this period covering in part the time it is said the insured had stomach ulcers. Dr. Gould testified that he

had treated the insured's wife and babies, but that he had never given insured a dose of medicine, and that if the insured had ever been sick he had never heard of it; that he did on one occasion sell insured some syrup of pepsin, but this may have been for one of the babies.

Dr. Stockes testified that he was called to attend the insured in March, 1937, and found him suffering from a bowel obstruction, and upon his suggestion insured went to the hospital of Dr. Buchanan, in Prescott, where the insured died two days after entering the hospital.

A witness for defendant testified that the insured suffered from indigestion and ate sparingly specially prepared foods. But, as has been said, there was much testimony to the contrary.

Dr. Buchanan, testifying as a witness in appellant's behalf, produced the records of his hospital relating to the treatment of insured in the hospital. Insured was admitted March 15th, and died during the night of March 16th. The patient had agonizing pains in his abdomen, which only a hypodermic could relieve. The clinical history of the patient was taken upon his admission to the hospital. An assistant to Dr. Buchanan filled the blanks upon the insured's admission. It was there written that insured had "Never been sick to amount to anything except in past years diagnosis on several occasions of gastric ulcers was made," but this record also recites "no digestive disturbances for the past three or four years." Dr. Buchanan testified that the patient was desperately sick when he entered the hospital and that "There was a question as to whether he had intestinal obstruction or gastric ulcers, ruptured gastric ulcers, I notice I say I thought he had ruptured gastric ulcers." This last statement was a portion of the hospital record which Dr. Buchanan had himself written. But the doctor admitted that he did not know how long the patient had had the ulcers, and that he could not tell whether he had them on March 6, 1936, this being the date of the policy. Interpreting the record made by his assistant Dr. Buchanan testified: "The way I understand it he had had diagnosis made several times prior to that time, but hadn't

bothered him any in the least—had no digestive disturbances doesn't give any date as to when diagnosis was made, he said for the last three or four years he had no digestive disturbances. Usually when you have gastric ulcers you do have small obstructions.''

The authorities are not agreed upon the admissibility of hospital records, and the case of *Lund* v. *Olson,* 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371, contains an extensive annotation on the subject. In some of the cases there cited the hospital records were excluded under the rule against hearsay evidence, and in other cases they were excluded as being privileged communications.

Professor Wigmore says hospital records should be admitted, and that they have been made admissible by statute in some states. 3 Wigmore on Evidence, § 1707, p. 662.

There is no question in this case as to the hospital records being inadmissible as a privileged communication, inasmuch as both the policy and the stipulation of the beneficiary in the proof of death expressly give assent to the introduction of ''all hospital and medical records.'' But we do not regard these records, nor the testimony of Dr. Buchanan relating to them as conclusive of the question whether insured had gastric ulcers when the policy was delivered. The testimony, in its entirety, presents the question of fact whether insured had gastric ulcers when the policy was delivered. Dr. Buchanan declined to say that insured did have these ulcers at that time, although, in answer to certain hypothetical questions, he expressed the opinion that insured did then have them. But the hypotheses upon which the questions were asked and answers given were based to a material extent upon the testimony of Mrs. Breitenberg, and if her testimony is discarded as untrue the value of the expert's testimony is destroyed, and, as has been said, the jury may not have believed her testimony, and it cannot be said that it was an arbitrary act on the part of the jury to do so.

Appellee sued for $400, and asked an instruction telling the jury that the verdict should be for that sum if

the jury found for the plaintiff. The court was of opinion that under the policy a recovery could not be for more than $266.67, whereupon the plaintiff amended her complaint by reducing the amount sued for to $266.67, and requested an instruction, numbered 2, telling the jury the verdict should be for that sum if the defendant was found liable on the policy.

There was a verdict for the plaintiff in the sum of $266.67, upon which the court awarded judgment for an attorney's fee of $50 and for a penalty of 12 per cent. It is insisted that it was error to award judgment for the penalty and the attorney's fee for the reason that the plaintiff did not recover the sum sued for. Section 7670, Pope's Digest.

But the sum finally sued for was $266.67, and it was within the discretion of the court to permit this amendment. Had the insurance company offered to confess judgment for this amount when the complaint was amended it would have been proper to enter a judgment for that amount without penalty or attorney's fee. But this was not done. The defendant then insisted, and now insists that the plaintiff was not entitled to recover anything.

It was not error, therefore, to award judgment for the penalty provided by statute, and for the attorney's fee, which does not appear to be excessive.

A reversal is asked upon account of the closing argument of counsel for appellee, in the course of which he stated that the country would be better off if an insurance company that will not pay legal claims were put out of business by the people. Upon objection being made the court admonished the jury that "Attorneys have a right to express their opinion on the evidence, but in arriving at your verdict in this case the only thing you will consider is the testimony you heard from the witness stand, and the law as given to you by the court."

We think this was an improper argument; but we also think any prejudice which might have resulted therefrom was removed by the instruction of the court relating to it. The attorney made no statement of fact, but

merely expressed his opinion as to what the policy of the law should be in refusing to permit insurance companies to operate which refuse to pay legal claims. He did not ask the jury to return a verdict in plaintiff's favor although the law and testimony did not require that action, and the court told the jury that "in arriving at your verdict in this case the only thing you will consider is the testimony you heard from the witness stand, and the law as given to you by the court." *Anderson* v. *Erberich,* 195 Ark. 321, 112 S. W. 2d 634.

Upon the whole case we find no error, and as the testimony is legally sufficient to support the verdict the judgment must be affirmed, and it is so ordered.