UNION LIFE INSURANCE COMPANY v. JOHNSON.

4-5665 133 S. W. 2d 841

Opinion delivered November 20, 1939.

*E. M. Arnold,* for appellant.

*J. E. Lightle, Jr.,* and *R. H. Lindsey,* for appellee.

SMITH, J. Appellant insurance company issued a policy of insurance upon the life of Virginia Johnson, for the sum of $300, payable, upon her death, to her husband, Fred Johnson. The policy was issued upon an application therefor made by the beneficiary named therein on February 12, 1937. Premiums of thirty cents payable each week were regularly made, and totaled $20.10.

Upon the death of the insured in June, 1938, proof of death was made, but liability under the policy was denied upon the ground that the issuance of the policy had been induced by false and fraudulent answers as to the state of applicant's health. The application was, by the terms of the policy, made a part thereof. It pro-vided that the contract of insurance should not be effective until the policy was delivered while the insured was in good health and of sound mind, and should be void if statements in the application upon these ques-

tions were false. The validity of this limitation upon liability is not questioned as a legal proposition. *Progressive Life Ins. Co.* v. *Preston,* 194 Ark. 84, 105 S. W. 2d 549, and *Progressive Life Ins. Co.* v. *Hulbert,* 196 Ark. 352, 118 S. W. 2d 268, are recent cases upholding this limitation upon liability. It is conceded that the answers to questions concerning the insured's health contained in the application for the insurance were untrue, in that she was not, at the time the application was made, in good health and of sound mind; but was, on the contrary, a patient in the State Hospital for Nervous Diseases. The proof of death disclosed this fact, and liability under the policy was denied.

A settlement was made and a written release was obtained, for which the sum of $25 was paid the beneficiary. The release was formally acknowledged before the clerk of the circuit court of the county in which the beneficiary resided. The policy provided that if the statements in the application were false, and the policy rendered void on that account, the insurer's liability should be limited to the return of the premiums paid. The consideration for the release exceeded the premiums.

This suit was brought to enforce payment of the policy, and was defended upon two grounds: (1) That there was no liability under the policy, and (2) If, so, that the liability had been compromised and settled. The trial resulted in a verdict and judgment for the plaintiff beneficiary for the sum of $275, with six per cent. interest thereon, from which judgment is this appeal.

False answers as to the insured's health and mental condition having been given in the application, it would ordinarily follow that the policy was void on that account. But the testimony on appellee's behalf was to the effect that appellant's soliciting agent was told that the insured was then a patient in the State Hospital. This fact was denied by the agent, who testified that appellee told him his wife was in good health, and did not tell him that she was then in the State Hospital. Witness wrote into the application the answers given by

appellee. Several women were present when he filled out the application, and he supposed one of them was the applicant. He did not testify that he asked whether any of the women present, was the applicant, and no one told him the applicant was present. He assumed, without inquiry, that the applicant was present, but no one made any statement to him which led to this false assumption. No one of the women was asked to sign the application. Appellee, himself, signed insured's name.

Appellee testified that he told the agent who took the application that his wife was in the hospital, and that he did not think the insurance company would write a policy on her life, but the agent assured him that the policy could be written. Theodore Moore testified that he and his mother resided in the house with appellee, and that he was present when the agent came there and said he was selling insurance. The agent proposed to write insurance for witness and his mother, but they declined the offer. The agent asked appellee about taking out insurance on the life of his wife, but was told by appellee that his wife was in the hospital and had been there for about a year. Appellee stated that he did not think insurance would be written on the life of his wife, but the agent said he would try to get the insurance, and said he thought he could. The agent filled out the application, and appellee signed it.

These conflicting questions of fact were submitted to the jury under appropriate instructions, and have been concluded by the verdict of the jury.

Numerous decisions of this and other courts are cited as approving, in effect, the law as stated in § 601 of the chapter on Insurance in 32 C. J., page 1333. The recent case of *Security Benefit Association* v. *Farmer*, 193 Ark. 370, 99 S. W. 2d 580, quotes with approval from that work as follows: " 'Where the facts have been truthfully stated to its agent, but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted

rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of insured. . . .'" The reasons for this rule are there stated. Many cases are cited in the note to the text quoted supporting this statement of the law. There appears also in this opinion by our court in the case just cited a quotation from 14 R. C. L., p. 1174, to the same effect. This case, with other similar decisions of this court, is cited in the very extensive note to the case of *Metropolitan Life Ins. Co.* v. *Alterovitz,* 214 Ind. 186, 14 N. E. 2d 570, 117 A. L. R. 770.

The effect of the release would, ordinarily, be to bar the prosecution of this suit, as it was executed for a valuable consideration, and, upon its face, appears to be a settlement of a pending controversy as to the insurer's liability; but it was alleged, and the jury has found, under testimony supporting that allegation, that its execution was procured by fraud and duress.

It is conceded that, in negotiating the release, the agent of the insurer stated to appellee that the company was liable only for the return of the premiums paid. But this statement, although incorrect, did not constitute fraud. It was so held in the case of *Security Life Ins. Co.* v. *Leeper,* 171 Ark. 77, 284 S. W. 12, where the authorities upon the subject were reviewed by Chief Justice McCulloch.

But it was further testified that the representative of the company who negotiated the settlement and obtained the release, stated to appellee that a change had been made in the proof of death, and that appellee would be sent to the penitentiary on that account, as the proof had been transmitted in the United States mails. It was denied that this threat had been made, or that appellee was accused of having changed the proof of death. Appellee testified that when the threat of prosecution and punishment was made, and because

of it, he went at once with the company's representative, to the office of the circuit clerk and executed and acknowledged the release.

The jury, no doubt, found—and we think had the right to so conclude—that taking appellee, a colored man, before an official known to be connected with the courts, added to his terror, and that the execution of the release was induced by the fear of prosecution and punishment, although appellee was not guilty, provided, of course, appellee's statement as to these circumstances was true, which was a question for the jury. The question of fact relating to the circumstances of the execution of this release was submitted to the jury under instructions which declared the law to be that the burden was upon appellee to show that the execution of the release had been procured by fraud and duress, and that otherwise there could be no recovery on the policy. The verdict concludes this question of fact.

In *Shattuck* v. *Watson*, 53 Ark. 147, 13 S. W. 516, 7 L. R. A. 551, the facts were that Mangum showed Watson certain instruments, which Mangum stated had been forged by Watson's son, but that Mangum only wanted the money which Watson's son had fraudulently secured, and Watson was told that if he would execute the note and make the mortgage, the liberty and good name of Watson's son would be saved. It was there said by Justice HEMINGWAY that "The allegation of duress is not sustained. It seems to be conceded that the son was guilty of a felony, and the appellant threatened only to prosecute him for his crime unless the amount obtained was secured. It was not a threat to prosecute on a simulated charge in order to extort money. *Marvin* v. *Marvin*, 52 Ark. 425, 12 S. W. 875, 20 Am. St. Rep. 191."

The Marvin Case, cited by Judge HEMINGWAY, was disposed of by a Per Curiam opinion reading as follows: "Per Curiam. If a man lawfully arrested on process for seduction marries the woman to procure his discharge, he cannot have the marriage avoided upon the ground of duress. The fact that he subsequently dis-

covers that he could not have been convicted will not alter the case, if the prosecution was upon probable cause, and not merely from malice. Bish. Mar. & Div.. § 212; 2 Kent, § 453; *Honnet* v. *Honnet,* 33 Ark. 156, 34 Am. Rep. 39. The prosecution of the appellant was upon probable cause. Let the decree be affirmed.''

Here, the jury might, and, no doubt, did, find that the threat of prosecution and punishment was made, and that, if made, it was done without probable cause, as no attempt was made to show that appellee had altered the proof of death; indeed, it is denied that he was accused of having done so. There was, therefore, no probable cause for the prosecution threatened against appellee.

In *Gardner* v. *Ward,* 99 Ark. 588, 138 S. W. 981, it was held (to quote a headnote) that ''To render a contract void because of threats or menaces, it is necessary that the threats and circumstances should be of a character to excite the reasonable apprehensions of a man or person of ordinary courage, and the promise, contract or statement should be made under the influence of such threats or menace.'' See, also, *Burr* v. *Burton,* 18 Ark. 214; *Bosley* v. *Shanner,* 26 Ark. 280; *Fonville* v. *Wichita State Bank & Trust Co.,* 161 Ark. 93, 255 S. W. 561, 33 A. L. R. 125; *Ellis* v. *First Nat. Bank of Fordyce,* 163 Ark. 471, 260 S. W. 714; *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S. W. 198, Ann. Cas. 1914A, 511.

The case of *National Life & Accident Ins. Co.* v. *Blanton,* 192 Ark. 1165, 97 S. W. 2d 77, is applicable to the facts of this case and, we think, controls it. The second headnote in that case reads as follows: ''Where an action on a life insurance policy was defended on the ground that, in consideration of return of premiums paid, appellee had released insurer from all liability, and the testimony showed that a number of agents of insurer visited appellee, and, in their efforts to secure the release, told her that if she tried to get the insurance she would be sent to the penitentiary, and the jury accepted this testimony as true, the Supreme Court will

also accept it as true, and hold that it estabished such duress as to render the contract of release unenforceable."

In the body of the opinion in the case just cited, the late Mr. Justice BUTLER said: ". . . that to constitute duress sufficient to render void a contract because of threats it is necessary that the threats and circumstances be of a character sufficient to excite the reasonable fears of a person of ordinary courage. This, of course, does not mean an ideal person, but one similar to the person affected and surrounded by similar circumstances. Manifestly, the threats which would induce the greatest fear in one person and constrain his acts might have no influence on another, and a person of 'ordinary courage' is one similar to the person against whom the threats are made as to age, sex, mentality and information surrounded by the same, or similar, conditions. 13 C. J., § 315, p. 400; § 319, p. 402.

"It is clearly inferable from the evidence that the appellee is a woman of limited information unaccustomed to business transactions. The threats made by the agents of appellant company would have had no influence on many persons, but to us, they appear to have been sufficient to submit to the jury whether sufficient to overcome the appellee's mind and to prevent her from exercising her own free will and to cause her to execute the release."

We conclude, therefore, that the testimony is sufficient to sustain the finding that the execution of the release was obtained by duress, and, if so, the jury properly disregarded it.

No error appears, and the judgment must be affirmed. It is so ordered.

BAKER, J., dissents.