## MISSOURI STATE LIFE INSURANCE COMPANY *v.* WITT.

### Opinion delivered November 19, 1923.

1. INSURANCE—APPLICATION.—Where an application for insurance advised the insurer that the applicant had submitted to an operation, and named the surgeon who attended him, the policy was not avoided by failure to mention that applicant was sick after the operation, as the insurer had an opportunity to satisfy itself as to whether the operation and illness incident thereto materially affected his health and longevity.

2. INSURANCE—APPLICATION.—An applicant for insurance, in answering questions as to illness, operations and injuries, is required to detail such only as materially affected his health or longevity.

3. INSURANCE—APPLICATION—NONDISCLOSURE OF ILLNESS.—An insurance policy is not avoided where insured, in answer to a question as to illness, failed to disclose an illness occasioned by a fall from a tree, from which the insured completely recovered.

4. INSURANCE—NONDISCLOSURE OF ILLNESS—BURDEN OF PROOF.—The burden is on the insurer to show that an illness not disclosed by an applicant, and relied on as defeating recovery under the policy, had materially affected the health and longevity of the insured.

5.  INSURANCE—NONDISCLOSURE OF DISEASE—IGNORANCE.—A nondisclosure of disease in an application for insurance not made a warranty, will not avoid the policy where applicant was ignorant of such disease.

6.  INSURANCE—MISREPRESENTATIONS IN APPLICATION.—W h e r e answers in an application for insurance constituted merely representations, and not warranties, a misrepresentation will not avoid the policy unless wilfully or knowingly made with intent to deceive.

7.  INSURANCE—QUESTION FOR JURY.—Where the evidence was conflicting as to whether insured had a high blood pressure before and at the time of examination for insurance, and whether it affected his health and longevity, such matters were for the jury.

8.  EVIDENCE—STATEMENT BY INSURED.—A statement by insured as to his physical condition, made a month after the policy sued on was issued, was inadmissible against the beneficiary, the policy constituting a contract between the company and the beneficiary.

9.  INSURANCE—INSTRUCTION.—An instruction that, to avoid the policy sued on, the insured must have made representations as to his health with intent to "defraud" the insurer, was not erroneous; "defraud" being used in the sense of "deceive."

Appeal from Prairie Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

*C. E. Pettit* and *W. A. Leach,* for appellant.

Had the facts been disclosed, the policy would not have been issued. A fact is material to the risk when it is such that the insurer would not have issued the policy had it known it. 98 Atl. 498; 224 S. W. 177; 97 S. E. 874; 15 Cyc. 805. The rule that the materiality of facts is for the jury should be qualified to this extent, that, while good faith and materiality are ordinarily a question for the jury, when such materiality is of doubtful character, still, if the evidence is clear and uncontrovertible, or if the statements relate to matters intrinsically, palpably and essentially material, or what is stated is so clearly material that reasonable minds cannot differ about it, or so clearly material that there is nothing left for the jury to pass upon, the question of materiality should not be submitted to the jury. Joyce on Ins., § 3710-A; 57 S. W. 635; 116 Pac. 154; 94 N. W. 599; 129 Ark. 43; 101 Atl. 608. See also 117 Atl. 323; 108 Md. 353; 117 Md. 259; 113 Md. 693; Phillips on Ins., § 342.

False answers in an application for life insurance, as to matters of fact and not of opinion, render the policy void, whether applicant had any intention of deceiving or not. 25 Cyc. 801; 108 S. E. 896; 104 S. E. 121; 98 S. E. 424; 218 Ill. App. 230; 117 Atl. 323; 59 Atl. 117. The materiality of the misrepresentation and its proved falsity does away with the necessity of showing fraud. Joyce on Ins., § 1897; 35 Fed. 252; 8 Am. Rep. 494; 18 Am. Rep. 681. The answers being false, the law will infer an intent to deceive, in the absence of explanation. 109 Atl. 22. Admissions or declarations to a third party are competent to show his knowledge of his physical condition at the time of the application. 69 N. Y. 256; 94 Va. 146; 115 Wis. 641; 73 N. E. 592; 20 Am. Rep. 522; 36 L. R. A. 271.

*Bogle & Sharp,* for appellee.

The burden of proof was on appellant to show that the fall from the tree affected the physical condition of the insured and his longevity, which condition it failed to meet. 58 Ark. 537; 13 Wall. 222. A specific instruction on the subject was given, and the finding of the jury on the question of fact is final. 22 Ark. 207; 37 Ark. 238; 96 Ark. 495. A subnormal blood pressure (an indicatory sign of health) which had occurred before the application, was not a matter required to be related at that time, any more than one is required to state occasions since childhood when he showed a temperature. 96 Ark. 495. Appellant failed to discharge the burden of proof resting on it to show that the insured was not in good health at the time he made application. 111 Ark. 554; 101 U. S. 708; 17 L. R. A. (N. S.) 1018. Statements made by the insured, after the making of the application, cannot serve to vitiate the contract of insurance. 134 Ark. 245, and cases cited.

Humphreys, J. This is an appeal from a judgment obtained in the circuit court of Prairie County, Southern District, by appellee against appellant for $3,000, upon a life insurance policy issued by appellant to appellee's

husband, Charles A. Witt, on the twelfth day of October, 1921, including a twelve per cent. penalty and attorney's fee of $500. The insured died on the twelfth day of March, 1922, and when proof of death was made, appellant refused to pay the policy, whereupon the beneficiary instituted this suit to recover thereon. Appellant interposed the defense that the insured made false answers to the questions propounded to him in the written application for the insurance.

The policy sued upon contained the following paragraph:

"Entire Contract. This policy and the application therefor constitute the entire contract. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy, unless it is contained in the written application therefor."

The application referred to in the paragraph quoted contained the following statement, questions and answers, over the signature of the insured:

"I agree, on behalf of myself and of any person who may have or claim any interest in any policy issued hereon:

"(d) That all statements and answers written herein, as well as those made and to be made, to the medical examiner in part II of this application, are full, true and complete.

"(5) Detail all illness, disease, operations, accidents or injuries you have had since childhood. (Give clinical history below).

Operation: appendicitis. Date: year, 1917; month, July. Duration: 2 weeks. Complications: none. Results: good. Name of medical attendant: Dr. J. P. Runyan, Little Rock, Arkansas.

"(6) (d) Has any physician ever expressed an opinion that your urine contained sugar or albumen or casts? (Give details).

"(6)  (d)  No.

"(8)  Are you now in good health? If not, what is the cause?

"(8)  Yes.

"I certify that the above answers are full, correct and true, and agree that all of the above shall constitute part II of my application."

Appellant contends for a reversal of the judgment upon three grounds: first, that the answers made by the insured in his application avoided the policy; second, that the court erred in excluding a sworn statement made by the insured to the Business Men's Assurance Company on June 8, 1922, relative to his physical condition from November 22, 1921, to January 8, 1922; and third, that the court erred in telling the jury that the burden was upon appellant to show that the representations made in the application were wilfully made with intent to defraud it.

(1)  It is claimed that the testimony reflects that the answers made in the application were not full, correct and true, because appellant concealed the fact that he was confined to the house for over thirteen weeks on account of sickness in 1918; that he was totally disabled for fourteen weeks in 1920 on account of a fall from a tree; that he had high blood pressure in February, 1921, and was under medical treatment on that account until the policy was issued; that he had nephritis and arteriosclerosis.

Concerning the illness in 1918, it appears from the testimony that it was the result of a malarial condition followed by an operation for appendicitis and adhesions. This operation was divulged to the company in the answer made, and the name of the attending physician was given, so the company had an opportunity to investigate and satisfy itself whether the operation and the illness incident thereto had materially affected his health and longevity. It is the law that the insured, in answering such a question as that propounded, is only required to detail

such illnesses, diseases, operations, accidents or injuries which had materially affected his health or longevity. *National Annuity Assn.* v. *Carter,* 96 Ark. 495.

Concerning the illness in 1920, it appears that it was occasioned by a fall from a tree. The record does not disclose that any ill effects resulted from the fall. His recovery was complete. The burden was upon appellant to show that it had materially affected his health and longevity. No such showing was made.

Concerning the claim that the insured concealed the fact that he had kidney trouble and hardening of the arteries, it appears that he was ignorant of the fact, if it was a fact, that he had nephritis and arterio-sclerosis. Dr. Murphy, who testified that he discovered the insured had this disease some time between February and October, 1921, was unable to say whether he ever imparted this information to him. This court is committed to the doctrine that "where answers in an application for insurance constitute merely representations, a misrepresentation will not avoid the policy unless wilfully or knowingly made with intent to deceive." *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101.

Concerning the high blood pressure, Dr. Murphy testified that he examined the insured in February, 1921, and discovered that his blood pressure was 250; that he informed him of this fact, and advised him to refrain from any exertion of any kind, and placed him upon a diet; that the blood pressure was reduced to 200, and that, upon an examination of the nurse's record, he found that it went down to 160; that from the time of his examination in February the insured was under his observation and treatment at intervals until his death. Dr. McKnight testified that he had occasion to test the insured's blood pressure to ascertain whether it was feasible to administer gas to him for the purpose of extracting his teeth, and that he informed him that he had high blood pressure; that he could not remember when he made the examination, but that it was some

time during the year 1921.   Dr. Stout, appellant's examining physician, who made a very complete and thorough examination of the insured on October 12, 1921, preparatory to issuing the policy, stated that his blood pressure was 135, or about normal; that he had no symptoms of nephritis or arterio-sclerosis, and that he was in good physical condition.   A large number of witnesses, who came in daily contact with the insured, stated that he was up and about his business practically all the time, and that apparently he was in the best of health.   The evidence was therefore conflicting as to whether the insured had high blood pressure before and at the time the examination was made and the policy issued, but if his blood pressure had been high, whether it had affected his health or longevity.   Under the evidence those things became matters of dispute for determination by the jury.

(2).   The sworn statement of the insured relative to his physical condition on and after November 22, 1921, more than a month after the policy sued upon was issued, was inadmissible under the rule announced in the case of *Lincoln Reserve Life Ins. Co.* v. *Smith,* 134 Ark. 245. The court said in that case:  ''The policy constituted a contract between the company and the beneficiary, either under an assignment or under the original designation in the policy itself, and it was not competent to prove, as against the interest of the beneficiary, the declarations of persons whose life was insured under the policy.''

(3).   Appellant admits that the instructions given by the court correctly placed the burden upon it to show that false, material representations, which induced the issuance of the policy, were made to it by the insured knowingly and wilfully, but contends that they are erroneous in telling the jury that they must also find that the insured made the misrepresentations with the intent to defraud the company.   This court has said that the misrepresentations must be made with intent to deceive the insurer.   *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark.

101; *Mutual Life Ins. Co.* v. *Owens,* 111 Ark. 554. We think the word "defraud" was used in the sense of "deceive," and that the instructions, in substance and effect, conform to the law laid down in the two cases last cited.

No error appearing, the judgment is affirmed.