NATIONAL LIFE & ACCIDENT INSURANCE CO. *v.* DAVIS.

Opinion delivered May 27, 1929.

*Bevens & Mundt,* for appellant.

*Sheffield & Coates,* for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellant, in the circuit court of Phillips County, to recover $155 as beneficiary in the life insurance policy issued to her aunt, Anna Harden, who is a negro woman, by appellant, on April 18, 1927, the policy being based upon an application of date March 31, 1927, which contained the following questions and answers:

"(1). The applicant was asked, 'What medical or surgical attention have you had in the last five years?' Her answer was, 'None.' (2). She was asked, 'Have you ever had heart disease?' and her answer was 'No.' (3). She was asked, 'Are you in good health?' Her answer to that question was 'Yes.' "

Appellant filed an answer denying any liability on the policy.

The cause was sent to the jury upon the pleadings, the testimony adduced by the parties, and the instructions of the court, which resulted in a verdict and judg-

ment in favor of appellee for $155, from which is this appeal.

At the conclusion of the testimony appellant requested the court to instruct a verdict for it upon the grounds: (1) That the undisputed testimony reflected that the insured was the aunt of appellee, and not dependent upon her for support; and (2), that the insured knowingly made false answers to the interrogatories propounded to her in her application for the insurance, in order to procure the policy.

(1). The undisputed testimony showed that appellee paid the premiums on the policy, and there was some testimony which tended to show that appellee arranged for her aunt to take the insurance on her life for appellee's benefit. Even if this were true, it was not necessary for appellee, in order to recover on the policy, to show that the insured was dependent upon her for support and maintenance, or was her debtor. This court announced the rule to be, in the case of *Century Life Insurance Co.* v. *Custer,* 178 Ark. 304, 10 S. W. (2d) 882, that, where the insured and beneficiary were closely related, an insurable interest in the life of each other existed by virtue of the relationship alone, and should not be classed as wagering contracts.

The case of *McRae* v. *Warmack,* 98 Ark. 52, 135 S. W. 807, 33 L. R. A. N. S. 949, in so far as it holds that an uncle has no insurable interest in the life of a nephew and cannot recover on a policy of insurance in the absence of a showing of reasonable ground of expectation of support to be furnished by the insured to the other, when the relationship was not concealed at the time the contract of insurance was entered into, is hereby overruled.

(2). In support of appellant's contention that the undisputed testimony reflected that the insured knowingly made false answers to the questions asked her in her application, appellant has called attention to the testimony of Mose Cross, Lilly B. Owens, and of two physicians introduced by him.

Mose Cross testified that he was the foster father of Anna Harden, and at the time of her death she had been living with him for more than a year; that she was in very bad health, not confined to her bed all of the time, but up and down; that she had a doctor of her own, and that he called in two doctors; that she picked cotton for him whenever she was able.

Lilly B. Owens testified that she was a neighbor of Anna Harden, and that in February, 1927, Anna told her that she was sick, and on another occasion that she was picking mullein to saturate her swollen limbs.

S. H. Hargrove, a negro physician, testified that Anna Harden came to his office, without assistance, in February, 1927, for treatment; that he examined her, and found that she had diabetes, which had caused a cardiac dilation; that he gave her something to drive the swelling out of her feet; that he did not tell her of the dilated condition of her heart; that she did not return for further treatment.

Dr. J. W. Nicholls testified that he waited on Anna Harden twice shortly before she died, the first time on April 30, 1927; that her heart was enlarged and her face and abdomen swollen; that she had dropsy, super-induced by the condition of her heart; that in his opinion her heart must have been affected at the time she made the application for insurance, on March 31, 1927, and must have known that she was a sick woman, even though unaware of the actual condition of her heart.

If this were the only testimony in the record relating to the condition of the insured's health at the time she applied for the policy, it might be said with reasonable certainty that she knowingly falsified when she said in the application that she was then in good health. This was her answer to the first question. The record contains other testimony which we think is clearly contradictory of the testimony thus detailed, and made this issue one to be determined by the jury. We will set out the substance of the testimony referred to after

discussing the insured's answers to the second and third questions, in the light of the testimony detailed above. The testimony detailed above is not conclusive that the insured intentionally misrepresented the condition of her heart, for Dr. Nicholls himself testified that he did not know whether the insured, on March 31, 1927, knew that she had heart trouble; and the negro physician testified that when he examined her to treat her in February, 1927, he did not tell her she had heart trouble. Neither does the evidence detailed above conclusively show that the insured knowingly made a false answer to the third question, within the true meaning of same. The question, correctly interpreted, had reference to a treatment or an operation for a serious ailment or trouble, and not for a slight or temporary indisposition. She had not been operated upon, and had not been told by the physician who treated her, before she applied for the insurance, that she had any constitutional ailment or disease. It not appearing that she knew of the serious condition of her heart, it cannot be said as an undisputed fact that she knowingly made a false answer to the third question.

Returning to the issue involved in the insured's answer to the first question, we find in the record the statement of appellant's agent, who prepared and sent in the insured's application, to the effect that, from information and observation, the applicant was in sound health, and without any deformity, lameness, or physical defect; and that he recommended that the insurance applied for be granted. Also the testimony of appellee to the effect that the insured was in good health. Also the testimony of Rosalie Allen, a neighbor, to the effect that the insured was up and around and in her garden on or about the date she signed the application for the insurance, and that there was nothing to indicate that she was a sick woman. The testimony last detailed is contradictory of the testimony introduced by appellant relative to the ill health of the insured, or that she

knowingly made a false answer concerning same to the first interrogatory propounded to her.

In the case of *Missouri State Life Insurance Co. v. Witt,* 161 Ark. 148, 256 S. W. 46, where the testimony of lay witnesses was in conflict with the opinion of physicians relative to the good health of the insured, this court ruled that the evidence presented a conflict in the testimony for determination by the jury. In view of the conflict of the testimony upon this point, we think the court properly submitted the issue to the jury.

No error appearing, the judgment is affirmed.