THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a corporation of the State of New York,

*vs.*

BERTHA F. WILSON, BERTHA F. WILSON, Administratrix of the Estate of Elhanan B. Wilson, and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware.

*New Castle, Feb. 18, 1941.*

*David F. Anderson,* of the office of Southerland, Berl, Potter & Leahy, for complainant.

*H. Eugene Savery,* for defendants.

THE VICE-CHANCELLOR: The question presented is whether certain statements made by insured to obtain reinstatements of a policy of life insurance, which had lapsed for non-payment of premiums, were of such character as to justify rescission of the reinstatements.

The policy is in the face amount of two thousand dollars and is dated October 28, 1920. Insured paid premiums quarterly as he was required to do; but failed to pay, within the period of grace allowed, the premium which fell due on October 28, 1937. In consequence, the insurance lapsed. The policy contains the following provision:

"Reinstatement. If this policy shall lapse in consequence of the non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Society, and the payment of all overdue premiums, with interest at 5% per annum, and upon the payment, or reinstatement of any indebtedness to the Society secured by this policy, with interest."

On January 5, 1938, insured signed and sent to complainant a request for reinstatement. He paid the amounts then overdue and the policy was revived. However, he failed to pay the next premium, due on January 28, 1938; and after the expiration of the grace period, the policy again lapsed. He made another request for reinstatement, which was received by complainant on April 5, 1938, and thereupon granted. Both requests are on printed forms supplied by complainant and the contents are substantially the same

except for the dates mentioned. The relevant portions of the second request read thus:

"Request for Reinstatement of Policy

"To the Equitable Life Assurance Society of the United States

"I, Elhanan B. Wilson of Wilmington * * * Delaware * * * hereby apply for the Reinstatement of Policy No. 2685-221 issued by the said Society upon my life and now lapsed because of the non-payment of premium due on the 28th day of January, 1938.

"I hereby certify and represent that I am in good health; that except as stated below, I have had no disease, illness or injury, have not consulted nor been treated by any physician or practitioner, have not been a patient in any hospital or sanitarium, and that there has been no change in the health record of my family, within the past five years.

"I hereby agree that if the above numbered policy is reinstated by the Society, such reinstatement shall be based upon the representations contained in this declaration, which is personally signed by me; and that the reinstatement if granted shall not take effect until all premiums in arrears, with interest, have been duly paid during my good health.

"Note here any exceptions, including dates and complete details. [No exceptions are noted in the space provided.]

"* * * Received Apr. 5, 1938, E. L. A. S., Wilmington, Del.
"Dated at ........................ on ........................ 19........
"(Signature of Insured)   Elhanan B. Wilson"

In November, 1938, insured fell, fractured his shoulder, and died a few days later. The proofs of death and claim for payment of the insurance include a statement of the coroner of New Castle County that the cause of death was:

"Pulmonary Embolism following Traumatism to injured tissues.
"Contributory: Tripped over curb and fell with body weight on shoulder, causing fracture."

No premiums were due at insured's death.

Thereafter, complainant discovered that during the five years prior to the dates of the applications for reinstatement, insured had consulted and been treated by a physician for various ills and complaints, and had been a patient in a hospital. Complainant brought this suit to rescind the two reinstatements. The grounds urged for rescission are

that the statements that insured was in good health and had had no disease or illness, and the failure to disclose the medical attendance constitute false representations of matters material to the risk.

The policy provides for double indemnity in case of death resulting from an accident. It further provides that upon default in the payment of premiums, it shall remain effective for its face amount for periods varying in length with the time it has been in force, but without the right to double indemnity in case of death from an accident. Complainant does not ask that the policy itself be annulled; but takes the position that it was in force at the death of insured only for its face amount, since the reinstatements should be set aside. Complainant has paid to the named beneficiary the face value less certain agreed adjustments.

It is admitted in the answer that insured was a patient in the Homeopathic Hospital in Wilmington from September 14 to 22, 1933, when he underwent an hemorrhoidectomy. Complainant called as its witness a doctor who testified that he examined and treated insured during 1934, once in July, three times in September, five times in October, and once each in November and December; during 1935, once each in April and May; and during 1938, five times in March and once in November. The ills for which the insured was treated were an attack of bronchitis, several colds, general complaints, tiredness, exhaustion, neuralgia, neuritis, and sinus infection. The doctor stated that insured's blood pressure varied between 108 and 165 and that he had occasional shortness of breath; that at all of the times mentioned he found that insured had "myocardosis," which he defined as "a degeneration of the heart muscles, which weakens a person, and they feel tired and exhausted." The doctor further testified that he recommended rest but no medication on account of the myocardosis; that insured was confined to his bed only at the time he had bronchitis, the treatments for the other complaints having been

at the doctor's office; that insured's condition during the period from 1934 to 1938 was "fairly satisfactory," and that "aside from colds, and so on, he was in the condition of a person over fifty, and generally in the same state of health as a person who had gone through the wear and tear of life."

Evidence was introduced on behalf of the defendant beneficiary that electrocardiograms were made of insured's heart on June 25, 1934, and on May 24, 1938, by a technician retained by insured's employer. A doctor in the service of the same employer and who specializes in cardiology and has had experience in interpreting electrocardiograms testified that she could not make a diagnosis of myocardosis from either of the cardiograms of insured's heart. The witness stated, however, that she would not be willing to rely on a cardiogram alone in making a diagnosis. In distinguishing "myocarditis" from "myocardosis" she said: "I believe myocardosis is a condition found in elderly people— say people past the age of forty. It is a normal condition, and gradually increases according to the age." Another doctor of insured's employer testified that he had examined insured in May, 1938; that his general physical condition was "in keeping with his age at that particular time"; and that "he had no evidence of any organic diseases of a serious nature."

Insured's wife, the beneficiary named in the policy and one of the defendants, testified that her husband's physical condition was good between 1934 and 1938; that he had colds once in a while, but worked most of the time and never told her that he had myocardosis. Two sons and a daughter of insured testified in substance that while insured had colds during the period in question, his health was "good" or "normal" from their observation.

Complainant does not in terms characterize the contents of the requests for reinstatement as warranties. Where there is doubt as to the meaning of language used, that con-

struction must prevail which protects the insured against the obligations arising from a strict warranty. *Moulor v. American Life Ins. Co.*, 111 *U. S.* 335, 4 *S. Ct.* 466, 28 *L. Ed.* 447; *McClain v. Provident Sav. Life Assur. Soc.* (3 *Cir.*) 110 *F.* 80. Here, particularly because of the use of the words "certify and represent" and "representations" in the requests for reinstatement, the more reasonable construction is that the statements are representations only.

A representation by an applicant for insurance or reinstatement that his health is good is an expression of his opinion, which is unimpeachable if he had reason to believe, and did in fact believe, that such was the state of his health. *Acacia Mut. Life Ass'n. v. Kaul*, 114 *N. J. Eq.* 491, 169 *A.* 36; *Shapiro v. Metropolitan Life Ins. Co.*, 114 *N. J. Eq.* 378, 168 *A.* 637; 29 *Am. Jur. p.* 457-459. It does not appear that insured's health, at the times he signed the reinstatement requests, was impaired by any ill, with the possible exception of myocardosis; and it does not definitely appear that he knew he had this latter infirmity. Hence, the facts do not establish the want of reason for, or belief in his representations that he was in good health.

An applicant's statement that he has had no "disease" or "illness" is not a material misrepresentation unless he has had some disorder, of which he is aware, which "so far affects the physical condition that it may reasonably be held to form a material factor in estimating the possible duration of the particular life and consequent safety of the risk, as distinguished from mere temporary ailments or affections, not of so serious or dangerous a character as to have a bearing upon general health and continuance of life, and which ordinarily pass away leaving no trace in the constitution or permanent injury to the system." 4 *Couch, Cyclopedia of Insurance Law*, § 885b; *Clayton v. General Acc. Fire & Life Assur. Corporation*, 104 *N. J. L.* 364, 140 *A.* 307; *Missouri State Life Ins. Co. v. Witt*, 161 *Ark.* 148, 256 *S. W.* 46; *Penn Mut. Life Ins. Co. v. Mechanics' Savings*

*Bank & Trust Co.,* (6 *Cir.*) 72 *F.* 413, 38 *L. R. A.* 33; 37 *C. J. pp.* 458-462; 29 *Am. Jur., p.* 455.

In this case there is no direct evidence that any of insured's ills were of the serious character described above. Certainly no connection between them and the cause of death has been demonstrated. It is true that any affection of the heart, because of the vital importance of that organ, is prone to suggest a serious infirmity. Such an inference, however, is precluded by the testimony of the doctors concerning the nature of insured's infirmity and his health and physical condition generally. This testimony, with that of the other witnesses, makes it reasonable to conclude that none of the ailments seriously affected the general soundness and healthfulness of his system or his probable continuance of life.

Concerning his medical treatments and consultations and confinement in a hospital, insured's statements were plainly false. Such assertions are not the expression of an opinion, but rather the affirmation of facts. A case for rescission is made out if the facts misrepresented were material to the risk. *Rust v. Metropolitan Life Ins. Co.,* 6 *W. W. Harr.* (36 *Del.*) 294, 295, 175 *A.* 198.

The significance to the insurer of statements concerning medical attendance lies in the information thereby elicited with relation to the health and physical condition of the applicant. The statements themselves may contain enough to satisfy the insurer. If not, it may decline to act further until it is apprised of what was found by those who have rendered medical services to the applicant. Hence, it is fair to assume that a disclosure that there has been medical attendance will result in a disclosure of the physical conditions of which those rendering the services were aware. Facts thus ascertained may have persuasive influence upon the insurer's determination with respect to undertaking an insurance contract. But whether a disclosure of medical attendance is material to the risk must depend upon the facts of the particular case; the disclosure is not material unless

there be revealed or found to exist during the attendance, a physical condition which is itself material. *New York Life Ins. Co. v. Cumins,* (3. *Cir.*) 24 *F. 2d,* 1, 2; *Russell v. New York Life Ins. Co.,* 35 *Idaho* 774, 209 *P.* 273; *Mutual Life Ins. Co. of New York v. Held,* 157 *Md.* 551, 146 *A.* 755. The infirmities brought to light by the medical attendance have already been considered. From what was said about them, it follows that complainant has failed to sustain the burden of showing that insured's misrepresentations were material to the risk.

Other questions raised by complainant need not be decided.

A decree dismissing the bill will be advised.