JOHN E. HARRIS,

*vs.*

NEW YORK LIFE INSURANCE COMPANY, a corporation created by and existing under the Laws of the State of New York.

*New Castle, July. 23, 1943.*

174

*James R. Morford,* of the firm of Marvel and Morford, for complainant.

*William Poole,* of the office of Southerland, Berl & Potter, for defendant.

HARRINGTON, Chancellor: This is a bill to enjoin the New York Life Insurance Company from rescinding and canceling a contract, whereby a lapsed policy of insurance on the life of Harris had been reinstated and made effective. The lapse was caused by the complainant's failure to pay a quarterly premium on the policy, when due. That instrument provided:

"Reinstatement:—At any time within five years after any default, upon written application by the Insured and upon presentation at the Home Office of evidence of insurability satisfactory to the Company, this Policy may be reinstated together with any indebtedness in accordance with the loan provisions of the Policy, upon payment of loan interest and of arrears of, premiums with five per cent interest thereon from their due date."

The complainant's application for a reinstatement was made and approved by the company under that provision. Harris was then a resident of Rehoboth Beach, Delaware, and the New York Life Insurance Company was a corporation of the State of New York, with its home office in the City of New York. The "evidence of insurability", required to be presented at the home office of the company, consisted of: (1) a satisfactory physical examination by a physician designated by it; and (2) satisfactory answers to a questionnaire relating to the applicant's health. The latter included searching questions as to whether Harris had ever consulted a physician for certain specified diseases or any other "ailments or diseases". The tenth question was: "What physician or practitioner, not named above, have you consulted or been examined or treated by within the past five years?" The complainant answered: "Dr. Richard Beebe, Lewes, Del. Blood Pressure Check-up. O. K. Bronchitis. Well." All of this information composed a part of the complainant's application for the reinstatement of his policy, and was sent to the New York office of the company by the physician selected by it, after he had given Harris a physical examination. Relying on the representations made, the company accepted the unpaid premium of July 16th, 1939, with interest, and reinstated the policy on or about September 9th, 1939.

It later learned that Harris' answer to the tenth question in his application was incorrect, and because of that fact, on July 8th, 1940 the home office notified him that the reinstatement contract had been rescinded and his policy canceled. Harris did not deny that he had consulted Dr.

Barsky on four occasions in March and April of 1937 and Dr. William H. Kraemer in both July and August of the same year. He points out, however, that the evidence shows that neither of them found anything radically wrong with him physically, and claims that his failure to disclose those visits was not a material misrepresentation, justifying the rescission of the reinstatement contract. Under the law of this State, such a contract can only be rescinded for a false representation inducing it, if the facts misrepresented are material to the risk assumed by the company; other misrepresentations, though made, would not affect the rights of the insured. *Harris v. New York Life Ins. Co.*, 26 *Del. Ch.* 134, 24 *A.* 2d 543; *Equitable Life Assur. Co. v. Wilson*, 25 Del. Ch. 296, 18 *A.* 2d 240. But the question is whether that law is controlling. The Insurance Company claims that the contract sought to be rescinded was made in the State of New York and its validity is controlled by the law of that State.

As recently as 1935, the Superior Court pointed out: "It is a general rule of the widest acceptation that the construction and validity of a contract is governed by the law of the place where it is made." *Lams v. F. H. Smith Co.*, 6 *W. W. Harr.* (36 Del.) 477, 483, 178*A.* 651, 653, 105 *A.L.R.* 646; see also *Cohen v. Home Ins. Co.*, 6 *Boyce* 201, 97 *A.* 1014; *Peckham v. Industrial, etc., Co.*, 3 *W. W. Harr.* (33 Del.) 591; 2 *Beale, Conf. Laws*, §§ 332.3, 332.4; *Goodrich Conf. Laws*, 229. That rule was recognized in this State as early as 1834. *Maberry, et al. v. Shisler*, 1 Harr. 349, 352, 354, *note*. Where the contract is to be performed elsewhere, the cases are in conflict, but the rule announced in *Lams v. F. H. Smith Company*, *supra*, seems to be the logical one (2 *Beale, Conf. Laws*, §§ 332.4, 332.57), and is, perhaps, generally applied in determining the validity of an insurance contract. 1 *Couch, Cyc. Ins. Law*, § 194. It is a fundamental doctrine that "the laws of every State affect and bind directly * * * all contracts made and acts done within

it." 2 *Beale, Conf. Laws,* § 332.3; *Story's Conf. Laws,* § 18. When an application for the reinstatement of a lapsed policy of insurance is approved by the company, the contract made thereby is merely collateral to the original contract, and is of an informal and unilateral nature. 2 *Beale, Conf. Laws,* §§ 317.2, 323.1. Such an application is a request for a waiver of the forfeiture of rights, caused by the failure of the insured to pay a premium when due, and its approval by the company does not create a new insurance contract, but merely revives the old one. *Reidy v. John Hancock Mutual Life Ins. Co.,* 245 *Mass.* 373, 139 *N.E.* 538; *Acacia Mutual Life Ass'n. v. Kaul,* 114 *N.J. Eq.* 491, 169 *A.* 36. As such informal contracts become binding when, and only when, the act requested takes place, they are made when that act occurs. 2 *Beale, Conf. Laws,* § 323.1; 1 *Willist. Contracts (Rev. Ed.)* 309, 310; *Restat. Conf. Laws,* §§ 318b, 323. In other words, "if an offer contemplates a unilateral contract, and calls for the performance of an act, the place where the act is done is the place of contract." 1 *Willist. Contracts, supra;* see also *Acacia Mut. Life Assn. v. Kaul, supra; Wastum v. Lincoln Nat. Life Ins. Co.,* 12 *F.* 2d 422. Applying these principles, the reinstatement contract was made in Delaware.

On August 29th, 1939, the cashier of the Wilmington agency of the company, to which Harris' insurance premiums had been payable, acknowledged the receipt of a tentative deposit of the July premium of $34.25, and stated that it would be refunded "if the company" did not within thirty days thereafter "mail" Harris notice that his application of August 23rd had been approved. The importance of that letter and the mode of communication referred to is emphasized by the complainant; but the reinstatement provision of the policy did not contemplate a bilateral contract, and the subsequent letter to Harris, which in effect notified him that his application had been approved, was not a pertinent fact in determining how and where the

contract was made. See *Thompson v. Postal Life Ins. Co.,*
226 *N.Y.* 363, 123 *N.E.* 750. The payment of the premium
due, with 5% interest thereon, was, however, a condition
precedent to reinstatement. That not only appears from
the pertinent provision of the policy, but from the application. The latter provides:

> "If the evidence of my insurability is satisfactory to the company
> and it has received all sums the policy requires to be paid for reinstatement, then and not until then, said policy shall be deemed reinstated."

It does not appear when the interest on the July premium was paid; but the receipt of the cashier of the Wilmington agency, dated September 9th, 1939, recited that
Harris' application had been approved by the company,
and stated "the settlement of the amount in default is accepted and this receipt this day issued." A tentative approval of the complainant's application would naturally precede the payment of the back premiums and the final reinstatement of the policy, but the receipt of the amount due
was the last act, making the transaction binding on both
parties, and the necessary inference is that that act occurred
in Delaware. There is nothing in the evidence to indicate
that any further action was required or taken at the home
office in the State of New York. The cases in this State are,
therefore, controlling, and Harris' failure to disclose in his
application the visits made to Dr. Barsky and Dr. Kraemer
in the months of March, April, July and August of 1937
is not a material misrepresentation, justifying the rescission of the reinstatement contract. Having reached that
conclusion, the New York cases in evidence need not be considered.

A decree will be entered in accordance with this opinion.