Universal Life & Accident Insurance
Company *v.* Stuart.

4-9658                                    245 S. W. 2d 219

Opinion delivered January 21, 1952.

*Ted Goldman,* for appellant.

*Louis Josephs* and *T. B. Vance,* for appellee.

Holt, J.   Appellee, Flossie Stuart, was the beneficiary in a life insurance policy in the amount of $525, issued to her father, J. C. Johnson, June 27, 1949. Fol-

lowing her father's death on November 23, 1949, she sued appellant (upon its refusal to pay) to recover the amount specified in the policy. There was a jury verdict in her favor, and from the judgment for the full amount, plus penalty, an attorney's fee of $250 and costs, comes this appeal.

Appellant denied all liability and defended below and defends here on two primary grounds: (1) That insured was afflicted with chronic nephritis when he applied for the insurance and falsely represented that he was not so afflicted, and that he knew at the time he was afflicted with nephritis and that nephritis caused his death. (2) That appellee, as beneficiary, had executed and delivered to the company her full release from all liability under the policy.

— (1) —

As to appellant's first contention. The policy contained provisions pertinent here, as follows: "This policy constitutes the entire agreement between the company and the insured or owner thereof. . . . All statements made by the applicant or on his behalf for this policy, in the absence of fraud, will be deemed representations and not warranties. . . . 3. NO OBLIGATION IS ASSUMED BY THE COMPANY PRIOR TO THE DATE HEREOF, nor unless on said date the insured is alive and in sound health. Should the insured not be alive or not be in sound health on the date hereof, any amount paid to the company will be returned."

No medical examination was required of the insured. He made application for the policy on June 14, 1949.

Appellee testified that appellant's agent, Broadus, solicited the insurance on her father while he was "chopping cotton" and that Broadus told her her father seemed to be in pretty good health. She further testified that her father had had no sickness from the date of the policy to his death, that he not only chopped cotton but worked for the Texarkana Iron & Metal Company, that during the week of his death, he picked cotton for J. T. Parks. She saw him practically every day and in so far as she knew

he was never sick. She further testified that Dr. G. U. Jamison told her that her father died from a heart attack and did not mention anything about nephritis, that the only time that the doctor visited him prior to his death was when he received an ankle injury caused by a runaway team of mules.

The insured had been married twice. His former wife and his present wife testified, in effect, that he was in good sound health, doing manual labor practically every day up to the time of his death and that he died suddenly of heart trouble.

Dr. Jamison testified by deposition "that he concluded that the deceased died from nephritis was because heart trouble always accompanies nephritis." There was admitted in evidence the "physician's statement" (death proof) dated November 28, 1949, by Dr. Jamison, and quoting from his statement: "Q. Date of your first visit in last illness? A. No visit, sudden death. Q. Date of your last visit? A. November 10, 1947. . . . Q. Was deceased afflicted with any deformity or chronic disease? A. No." The record reflects that a line was drawn through "1947" at some subsequent date, obviously with newer ink, and there was added in place of "1947," "1949 G. U. J." In a deposition of Dr. Jamison, he was asked: "Q. Were you present at the death of deceased, J. C. Johnson? A. I was not. Q. How did you know that he suffered with heart attacks? A. Well, chronic nephritis always as a rule, involves the heart and blood vessels. Q. How long had he had chronic nephritis? A. That is indefinite, at least more than six months. . . . Q. Your conclusion that the deceased died of heart attack is solely based on your knowledge that heart attacks accompany nephritis? A. Accompanies nephritis that is true and the sudden death as represented to me."

Appellant's agent, Mr. Broadus, testified, in effect, that he talked to the insured and closely observed him for thirty minutes when he took the application; that he recommended him as a good risk and that he then made further investigation of the insured from neighbors and friends.

We have many times announced the rule of law applicable to similar facts and policy provisions, as presented here, to be, that an insurance company is liable unless there were fraudulent representations made by the applicant to the company that induced the issuance of the policy. We said in *Guardian Life Insurance Company* v. *Johnson,* 186 Ark. 1019, 57 S. W. 2d 555: "No fraud was shown on the part of appellee in procuring the policies, so his statement that he was in good health in his applications for the policies was a representation only, and, if made in good faith, will not avoid the policies. (Citing cases.) These policies themselves provide that, in the absence of fraud, all statements of the insured shall be deemed representations and not warranties."

This question was properly submitted to the jury under correct instructions. As indicated, the policy here provided that in the absence of fraud, all statements of the insured should be deemed representations and not warranties, and the jury's verdict is binding on appellant.

The court, on request of appellee, instructed the jury: "If you find from a preponderance of the evidence that the deceased insured was not in sound health at the time he applied for and received the policy of insurance sued on herein, but if you further find that he did not know at the time his health was unsound and did not fraudulently conceal his condition, then you are told in this connection that his representation as to health, if untrue, would not be a valid defense to the plaintiff's action herein. The burden of proof is on the insurance company to show from the testimony that the insured's health was unsound and that he falsely and fraudulently represented the same to be unsound at the time he applied therefor."

But, says appellant, the trial court erred in giving to the jury, the following instruction: "You are instructed that if you find from a preponderance of the evidence that the deceased, J. C. Johnson, was afflicted with *serious* heart or kidney trouble on the date of application for the policy, June 27, 1949, and that he was not then in sound health, *and knew he was not in sound health,* you will find for the defendant."

Appellant specifically objected to the action of the court in including in the instruction the italicized words "serious" and "and knew he was not in sound health." We think in the circumstances that a fair meaning and construction of the word "serious" as used, was to tell the jury that the disease must be more than a mere, temporary, trifling or unimportant affliction, and that no prejudice could have resulted to appellant.

Under the above authorities, the addition of the words "and knew he was not in sound health" was proper. There was sufficient substantial testimony from the lay witnesses alone to take the case to the jury.

In *National Life & Accident Insurance Co.* v. *Davis*, 179 Ark. 621, 17 S. W. 2d 312, this court said: "In the case of *Missouri State Life Insurance Co.* v. *Witt*, 161 Ark. 148, 256 S. W. 46, where the testimony of lay witnesses was in conflict with the opinion of physicians relative to the good health of the insured, this court rules that the evidence presented a conflict in the testimony for determination by the jury," and in *American National Insurance Company* v. *Chavey*, 185 Ark. 865, 50 S. W. 2d 245, we said: "In an action by the beneficiary to recover on a life insurance policy, nonexpert witnesses may state their opinions as to the physical condition of deceased on the day when he took the fraternal insurance certificate and stated that his health was good."

— (2) —

As to the release. It appears that appellant's agent, Broadus, after securing an alleged release from appellee (who had paid all premiums for her father) delivered to her a check for $16.50 (total amount of premiums paid) which appellant claimed was in full settlement of the policy. On this issue, Flossie (a Negro girl) testified, in effect, that when, following her father's death, Broadus came to see her about the policy, the first thing he told her was "our company pays off" and led her to believe that she was going to receive full payment on the policy after she signed a release or receipt tendered by Broadus. She further testified that she did not see the check or discover its amount until she had signed the release, that

she never accepted it in settlement, and when she discovered what it contained she took it to her attorney the following morning and directed suit be filed. She further testified, in effect, that when she signed the papers she thought she was getting the face of the policy, that Broadus did not explain to her the contents of the alleged waiver and release.

We hold that the above testimony and policy provisions were sufficient to take the case to the jury. On this issue the court, among other proper instructions, told the jury at appellant's request: "You are instructed that if you find from a preponderance of the evidence that the plaintiff, Flossie Johnson Stuart, accepted the check issued to her by the defendant insurance company in settlement of her claim under the policy, then you will find for the defendant.

"As to the assertion of the plaintiff that she signed the release as a result of the fraud or misrepresentation practiced on her by defendant's agent, E. W. Broadus, you are instructed that the burden is on the plaintiff to prove by a preponderance of the evidence that the said agent misrepresented to plaintiff present or past facts which he knew at the time to be untrue, and that the plaintiff acted upon said untruthful representations to her own detriment, and you are further instructed in that regard that the law imposed upon the plaintiff the duty to make a reasonable investigation of the truth or falsity of any representations made to her by the said agent."

The effect of the jury's verdict for appellee was a finding that the release in question had been induced and procured through misrepresentation or fraud. We said in *Union Life Insurance Company* v. *Johnson,* 199 Ark. 241, 133 S. W. 2d 841: "The effect of the release would, ordinarily, be to bar the prosecution of this suit, as it was executed for a valuable consideration, and, upon its face, appears to be a settlement of a pending controversy as to the insurer's liability; but it was alleged, and the jury has found, under testimony supporting that allegation, that its execution was procured by fraud and duress."

Other alleged errors in admitting certain evidence and exhibits have been considered and found untenable. Appellant's contention that the attorney's fee was excessive is also without merit. Section 66-514, Ark Stats., 1947, provides for reasonable attorney's fee to be taxed by the court as part of the costs. We cannot say that the fee allowed was excessive or that the court abused its discretion in allowing it. *Commercial Casualty Insurance Company* v. *McCulley,* 185 Ark. 468, 48 S. W. 2d 225.

Affirmed.