144 A.2d 234 (1958)
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation of the State of New Jersey, Plaintiff,
v.
Anna W. FORD and C. Hammond Ford, Administrator of the Estate of Milburn R. Ford, Defendants.
Court of Chancery of Delaware, New Castle.
July 18, 1958.
C. W. Berl, Jr., Wilmington, for plaintiff.
Wilfred J. Smith, Jr., Wilmington, for defendants.
MARVEL, Vice Chancellor.
Plaintiff seeks cancellation of a policy of insurance issued to Milburn R. Ford as of October 17, 1955 which insured his life in the face amount of $2,000 and provided for disability payments under stated terms and conditions which are of no concern in this litigation. Mr. Ford died on November 17, 1955, and his widow, the beneficiary on said policy, is named a defendant along with the administrator of the decedent's estate. Plaintiff contends that it was induced to issue said policy, a copy of which is attached to the complaint, by reason of "* * * fraudulent misrepresentations of the said Milburn R. Ford, contained in his application for said insurance. Said misrepresentations were intentional, conscious, and material to the risk to be assumed by Prudential".
The insurance plan under which decedent's life was insured along with those of six fellow employees and their employer, Joseph A. Smith, president of Silverside Dairy, Inc. of Wilmington, provided for the individual insuring of the lives of each such person. Separate policies were issued to each assured on which premiums varied apparently accordingly to the individual's age. The amount of the premium periodically due on each policy appeared on each *235 policy and its attached application, and an arrangement with the employer made provision for pay roll deductions for the purpose of meeting premium payments. No medical examination was required, and the individual policies were issued on the basis of "statements and agreements" contained on the application forms and payment in advance of initial premiums.
It was stipulated at trial that Mr. Milburn R. Ford contrary to statements appearing on his application for insurance had been regularly treated by a physician from July 30, 1952 until his death in November, 1955, that his blood pressure during this period ranged from a low of 154/102 to a high of 200/120, averaging 190/100, that he was under constant medication for hypertension, that he suffered from bronchiectasis, that on September 1, 1955 an examination by bronchoscope revealed chronic bronchitis emphysema (moderate), chronic pulmonary fibrosis and left ventricular enlargement, and that on October 15, 1955 a blood pressure reading disclosed pressure of 180/120.
On November 17, 1955 Ford died as a direct result of a rupture or aneurysm of the aorta. Proof was adduced at trial through plaintiff's assistant manager of its Debit Underwriting Division that had plaintiff known of Mr. Ford's poor health, specifically the data as to his high blood pressure, it would not have assumed the risk of insuring his life.
Plaintiff specifically alleges that despite such medical history (which is also set forth in the complaint) Mr. Ford falsely answered "no" to the following questions among others contained on the application form submitted to him by plaintiff's agent.
"19. Have you * * * ever been treated for or had any known indication of: (a) Heart trouble?
"Have you * * * ever been treated for or had any known indication of: (b) High Blood Pressure?
"20. Have you * * * within the past 5 years: (c) Consulted, been attended or examined by a doctor or other practitioner?"
Plaintiff contends that having relied upon the truth of the answers allegedly given by the insured, which answers were admittedly untrue, it is entitled to have the policy rescinded inasmuch as it would not have issued the policy to Ford had it known merely of his high blood pressure. While the customary procedure in a case such as this appear to be for the beneficiary of the policy to sue at law, there is precedent in this Court for rescission under facts such as here alleged, Equitable Life Assurance Society of United States v. Wilson, 25 Del. Ch. 296, 18 A.2d 240.
At trial the agent who solicited the policy from Mr. Ford testified that he asked Mr. Ford the questions appearing on the application form, including the ones set forth above, that the answers as given were then "filled in" by the agent, that Mr. Ford "glanced" at the form and signed it. No one, except perhaps another of plaintiff's agents was in the immediate vicinity of Ford and King at the time, although Ford's employer, Smith, testified that Ford had just come in from his milk delivery route at the time he was approached by King about insurance and was engaged in unloading his truck.
Plaintiff rests its case not only on what it contends to be Mr. King's unequivocal testimony concerning his interrogation of Mr. Ford, but also the admissions of Ford's employer, Smith, that inquiry was made of him by King about his (Smith's) state of health, as well as the testimony of another employee, McNulty, to the effect that he was asked the listed medical questions by King, although concededly no mention is made on his application of a serious injury allegedly[1] reported. Plaintiff points out *236 that there is no direct controverting of King's testimony and argues that there being evidence of a course of conduct with others at the Silverside Dairy interrogated about the same type of insurance that an inference must arise that Ford received similar treatment. Defendants on the other hand point to the absence of any material medical history on the Silverside Dairy applications and on those of other groups similarly solicited by plaintiff's agent as evidence of utter indifference to the health of prospective insureds on the part of such agent.
Many months having elapsed since trial, during which defendants were seriously in default on the filing of their brief, the Court on taking up the case for decision was faced with the problem of passing on King's credibility almost a year after observing him on the stand and decided to seek an advisory jury verdict on the facts concerning King's dealings with the decedent, Ford, in a trial in which expert hand-writing testimony would be appropriate.
The jury so impaneled on this Court's order concluded that Ford did not inform King at the time the application was taken that he had never been treated for high blood pressure. The jury further concluded that the specific question 19(b) on the form (see ante) pertaining to treatment or indication of high blood pressure was not asked of Ford, and that the negative answer to such question which appears on the form was not filled in at the time Ford signed the application. The jury made the same finding as to question 20(c) on the form pertaining to consultation of a doctor over the preceding five years.
In order for defendants successfully to defend this case they must in view of the nature of the contract involved and the obvious materiality of Ford's actual state of health to the undertaking assumed by plaintiff, necessarily prove fraud on the part of the agent, King, Prudential Ins. Co. v. Gutowski, 10 Terry 233, 113 A.2d 579, 52 A.L.R.2d 1073. The answers supplied by the jury to the questions propounded to them viewed in a light most favorable to King point to an extremely slipshod and unprofessional effort on King's part, an indifference to Ford's specific state of health, and a later filling in by someone of answers not specifically asked of Ford. But even if I were to accept a finding of active fraud on King's part (and such fraud must necessarily be found by disbelieving King as did the jury) are defendants under all the facts and circumstances surrounding the contract here under attack entitled to receive the death benefits provided for in the contract of insurance?
After the application was signed it was returned to the agent, King. It was thereafter reproduced and attached to a policy prepared at plaintiff's home office. Sometime after October 17, 1955 the policy was delivered to Mr. Ford. On the reduced photostat of the policy (exhibit "A" to the complaint) the negative answers to the health questions on the application and the unequivocal "None" as to the details of the illnesses inquired about in questions 19, 20, and 21, are quite legible. Furthermore, the declaration appearing above the signature of the insured as to the truth of the answers given to the questions appearing on the application is not difficult to read in its original size or to understand (plaintiff's exhibit 1). Finally, the policy itself clearly purports to furnish coverage to the individual therein insured rather than to a group and contains on its first page the statement: "This policy is issued in consideration of the statements and agreements contained in the application, a copy of which is attached[2] to and made a part of this Policy * * *".
If there was any doubt in Mr. Ford's mind as to the nature of the transaction he was entering into at the time he *237 signed the application; if, at that time he understood that the state of his health was immaterial to the insurer and believed that he was to be covered by some sort of group insurance plan in which the individual's health was somehow to be averaged out on an impersonal basis, a cursory examination of the issued policy with its attached photostat of the application would have disclosed to him that the answers concerning medical history appearing on the application were the very basis for the issuance to him of a policy of insurance and that the answers "filled in" by the agent were false. The policy clearly states that the insured's basic state of health, as disclosed in the application is material to the undertaking to be assumed by the insurer. So that if the actual application for insurance was solicited under pressure and without proper regard for the fiduciary duty owed by the agent to Mr. Ford, and such would seem to have been the case, on receipt of the policy by Mr. Ford there would appear to have been an ample opportunity for him to read and understand it and a duty resting on him to bring material mistakes in the application form to the insurer's attention for such action as it saw fit to take, Standard Sewing Machine Company v. Frame, 2 Pennewill 430, 48 A. 188; Minsker v. John Hancock Mutual Life Ins. Co., 254 N.Y. 333, 173 N.E. 4, 81 A.L.R. 829; New York Life Ins. Co. v. Fletcher, 117 U.S. 519, 6 S.Ct. 837, 29 L.Ed. 934; Monumental Life Insurance Co. v. Taylor, 212 Md. 202, 129 A.2d 103; and 29 Am.Jur., Insurance, p. 646, § 848.
In insurance matters the duty of utmost fair dealing rests not only on the insurer but on the insured, uberrimae fidei being required of both parties, Rust v. Metropolitan Life Ins. Co., 6 W.W.Harr. 294, 175 A. 198. While the record does not disclose the exact date and method of the delivery of the policy to Mr. Ford (it is dated October 17, 1955, the date of the application), there is testimony that it was delivered to him. Death did not occur until November 17, 1955. Had Ford prior to his death reported to the insurer the true facts concerning his health, facts well known to him, steps to cancel the policy could have been taken.
However, I am unwilling to enter an order in this case until further evidence is introduced concerning the delivery of the policy to Mr. Ford so that I can determine whether or not a clear duty then devolved on the decedent to report obvious errors in the contract. Counsel may confer with the Court concerning the fixing of a time for such further hearing.
NOTES
[1] On the other hand an appendectomy also allegedly reported by McNulty does appear on his application.
[2] See § 907(a) (3) of Title 18 Del.C. and compare Minsker v. John Hancock Mutual Life Ins. Co., infra.