187 A.2d 425 (1963)
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation of the Commonwealth of Pennsylvania, Plaintiff,
v.
Joseph H. FORD, Defendant.
Court of Chancery of Delaware, New Castle.
January 4, 1963.
*426 William F. Taylor of Morford, Young & Conaway, Wilmington, for plaintiff.
Abraham Hoffman of Hoffman & Hoffman, Wilmington, for defendant.
MARVEL, Vice Chancellor.
Plaintiff, an insurance company, complains in a first cause of action that it was induced to issue to plaintiff and thereafter to maintain in force an accident and health policy as a result of "* * * fraudulent misrepresentations and fraudulent conduct * * *" on the part of defendant. Plaintiff also alleges in its first cause of action that said "* * * misrepresentation and conduct were intentional, conscious, and material to the risk assumed by the plaintiff * * *." Plaintiff prays accordingly that said policy be rescinded and the parties restored to the status quo ante.
It is specifically contended by plaintiff that although defendant had been informed by his own physician, Dr. Vincent, approximately a week prior to his application for insurance that "* * * he had cataracts developing in both eyes * * *" that he failed in response to questions posed on plaintiff's application form either to disclose such organic disorder, the loss of eyesight therefrom ensuing, or the medical advice given in connection with consultation on such disorder.
Plaintiff contends that if it had known the actual facts concerning defendant's eyes at the time defendant applied for insurance it would not have issued its policy to him effective June 8, 1960, at least until the condition in question had been evaluated. The relief sought, as noted above, is cancellation of such policy and the return to plaintiff of the difference between the amounts paid to defendant by plaintiff in the form of benefits attributable to a later developing disability unrelated to his eyes and the initial premium paid by Ford.
In his original answer defendant denies any misrepresentation on his part as to his physical condition prior to issuance of the policy in issue and seeks affirmative relief by way of counterclaim in the form of an order requiring plaintiff to resume the payment to defendant of stipulated contractual benefits for an admitted infection of his right sinus area, an ailment admittedly unrelated to his alleged cataract condition.
In a second cause of action set forth in an amended complaint, plaintiff, evidently on the theory that it is immaterial whether the representations made by defendant concerning the condition of his eyes were made fraudulently or innocently, restates the basic contentions here advanced concerning alleged material misrepresentations on defendant's part concerning his health. It charges that when defendant signed an application for the insurance here in issue he knew or should have known certain answers thereto were incorrect and incomplete. It is also charged that defendant failed to disclose additional known facts concerning his alleged cataract condition after the policy containing a photostat of the insurance application had been issued and received by him.
Answering the amended complaint defendant avers that plaintiff "* * * fully investigated all of the facts existing at the time of the issuance * * *" of the policy. It is also averred in such pleading that on or about July 14, 1961, plaintiff "* * * with full knowledge of all of the facts, gave to the defendant an informal notice of cancellation of the aforementioned policy * * *" but that on October 17, 1961 plaintiff "* * * with full knowledge of all of the facts, abandoned its purported cancellation of said policy and affirmed said policy as being in full force and effect by voluntarily making a part payment *427 of defendant's loss covered by said policy in the amount of $400." Defendant moved to dismiss the complaint as amended at the conclusion of plaintiff's case. He now asks after trial that defendant's rights under the policy in question also be established. In the event defendant's contractual claims are vindicated defendant asks that his damages be established at a later hearing, if such proves to be necessary.
As to the first point raised by defendant, namely the materiality of the statements made by him concerning his then state of health on the application form executed by him, I am satisfied that defendant in fact made an incorrect statement on such form regardless of whether Dr. Vincent, in response to defendant's inquiries about his symptoms, made it entirely clear to defendant on May 25, 1960 that a cataract was developing on his right eye. The point is that defendant not only failed to disclose on the insurance application executed by him a week later that he had suffered any loss of eyesight but also denied that he had been given "medical advice" during the past five years other than that related to a stomach disorder which he fully disclosed on the application form, and, as the policy recites, it was issued "* * * in consideration of the statements and agreements contained in the application for it * * *."
An established principle of insurance law is that not only the insurer but the insured have a duty to deal with each other with utmost fairness, Prudential Insurance Company v. Ford, 37 Del.Ch. 425, 144 A.2d 234. This is particularly important in the case of contracts for health and life insurance where the insured is not required to submit to a medical examination. Accordingly, one seeking such insurance coverage must disclose information concerning material physical diseases or ailments known to the applicant in order for there to be an enforceable contract, Prudential Insurance Company of America v. Gutowski, 10 Terry 233, 113 A.2d 579, 52 A.L.R.2d 1073, Equitable Life Assurance Society v. Wilson, 25 Del.Ch. 296, 18 A.2d 240, and 29 American Jurisprudence, Insurance, § 753. On the other hand, if the insurer decides to grant insurance notwithstanding an applicant's disclosed physical ailment or ailments, it cannot be heard later to complain. There is, of course, a concomitant duty on the part of the agent of an insurance company selling this sort of insurance to see to it that the applicant knows exactly what he is signing when his application is being filled out and executed, Prudential Insurance Company v. Ford, supra.
While there is some evidence of "sales pressure" on the part of the agent selling the policy here in issue in that defendant signed the application while at his dining room table at a time when he was anxious to return to his job of running a service station, nonetheless I am satisfied that defendant is a man of normal intelligence and knew or should have known what he was signing. The form in question provided inter alia: "I hereby apply to the American Casualty Company of Reading, Pennsylvania, for a policy based on the following statements which I represent to be true and complete * * *", and there is no evidence that defendant was not capable of reading and comprehending such statement. Furthermore, the policy, when issued, contained a copy of the application form executed by him. Thus, defendant had an opportunity to correct any inadvertent mistakes contained in his answers to the critical questions to which he failed to give adequate answers. Compare Prudential Insurance Co. of America v. Ford, supra, and Minsker v. John Hancock Mutual Life Insurance Co., 254 N.Y. 333, 173 N.E. 4, 81 A.L.R. 829. Accordingly, in my opinion, plaintiff is entitled to have the contract in question rescinded on the grounds of defendant's material mis-statements unless plaintiff with knowledge of the fact intentionally waived defendant's failure to disclose information material to the insurance risks assumed under the contract.
*428 In support of his theory of waiver defendant has cited a number of cases in which an insurer with either actual or imputed knowledge of a breach on the part of an insured has continued to treat the policy as in full force and effect and so has been held to have waived such breach, Brooks Transportation Co., v. Merchants Mutual Casualty Co., 6 W.W.Harr. 40, 171 A. 207, Gallentine v. World Insurance Co., 167 Neb. 429, 93 N.W.2d 374 and Indiana Lumbermens Mutual Insurance Co. v. Janes (C.A.5) 230 F.2d 500. Pursuing this theory, defendant points out that in the case at bar plaintiff was paid a benefit of $100 per month as a disability payment based on his sinus aneurysm over the period from September 21, 1960 through May 24, 1961. On July 26, 1961, however, plaintiff received a letter from Francis E. Brennan, plaintiff's agent, which referred to the fact that the policy here in issue has been cancelled "* * * for reasons other than premium payments * * *." It appears from the evidence that this information had been verbally conveyed to defendant some time before the date of the letter. However, notwithstanding such purported cancellation, notice[1] of which was also conveyed to the Insurance Commissioner of Delaware on July 26, 1961, defendant received a disability check for $400 in October, 1961 which in effect brought the stipulated benefits up to date, allegedly as of the May date. It should also be noted that because of defendant's established disability, his obligation to pay a premium during this period was suspended under the terms of the contract. Defendant therefore contends that the payment of $400 made to defendant in October, 1961 not only after plaintiff had learned that defendant had visited Dr. Vincent in May of 1960 but also after plaintiff had acquired detailed information concerning the reasons for such visit constitutes a clear waiver of any prior breach committed by defendant.
Thus, while it is clear that Mr. Ford did not furnish full information concerning his physical condition to an agent of the insurer prior to issuance of the policy in litigation, after the insurer had become aware that defendant had not made the full disclosure he should have made, it thereafter affirmatively treated the policy as being in full force and effect. I so conclude despite the fact that after plaintiff had learned of defendant's consultation of Dr. Vincent, defendant's wife revoked a so-called medical authorization which would have permitted such doctor to furnish a more complete, written report on defendant's condition as of shortly before the time the contract here in issue was negotiated. In other words, I am satisfied that by the early summer of 1961 plaintiff[2] was not only aware of the fact that defendant had failed to disclose that he had consulted Dr. Vincent just before the policy sought to be cancelled was issued but that prior to revocation of the medical authorization in question the agent, Johnson, had talked to Dr. Vincent by phone concerning the condition of Mr. Ford's eyes. With such knowledge in its possession defendant purported to cancel the policy. Three months later, however, it tendered a check representing back benefit payments attributable to defendant's unrelated sinus aneurysm. I fail to see any basic distinction between this clear act of waiver and *429 those occurring in the cases cited by defendant. Possessed of information which defendant had innocently or wilfully withheld from an agent of the insurer and which if known at the time might well have led to a refusal to issue the policy in controversy, plaintiff nonetheless made the October 17, 1961 benefit payment of $400.00. This payment, which plaintiff made no effort to explain away on the grounds of mistake or inadvertence,[3] in my opinion constituted a waiver of defendant's breach and a clear recognition that the policy, which had apparently been earlier treated as cancelled, had been reinstated. Having done so, I fail to see how a later change of mind on plaintiff's part resulting in the filing of this suit on December 20, 1961 can nullify such act of waiver.
On notice, an order will be entered granting defendant's motion to dismiss and entering judgment on defendant's counterclaim in an amount to be determined, if necessary, at a later hearing.
NOTES
[1] The letter to Mr. Smith reads in part "On Friday, July 14, 1961, I was present when Mr. Johnson of the American Casualty Company informed Mr. Joseph H. Ford * * * that his policy * * * was being cancelled because of previous medical history that was not made known at time of application. I hope this statement fills your request as it was made known to me by Mr. Ford.
 "Sincerely yours,
 Francis E. Brennan"

[2] Plaintiff's agent, Mr. Johnson, testified (T. 96) "Well, he (Dr. Vincent) gave me the dates he had seen Mr. Ford from, I believe, the first time he ever saw him up to the time I called him, complaints, diagnosis, and that's about it, I guess."
[3] In its answer to defendant's counterclaim plaintiff simply avers that it made payments to defendant through September 20, 1961 rather than May 24, 1961 as claimed by defendant. It would appear that the date given by plaintiff is the correct one.